THE MARTHA BOGART.

MANNING *et al. v.* THE MARTHA BOGART.

(*District Court, S. D. New York.* March 25, 1892.)

COLLISION—STEAM AND SAIL MEETING—MISSING STAYS—DRIFTING.

A tug with a tow on a hawser coming down the East river below Corlear's Hook, and working over to the Brooklyn shore, saw ahead of her a schooner beating up stream, and moving towards the Brooklyn side. The tug thereupon gave several whistles, and, going close inshore, came to a stand-still along-side of some boats at the end of a pier. The schooner tacked about 100 feet ahead of the tug, and passed the tug safely, but, losing control of herself, drifted up some 300 feet further, and collided with the tow while lying at rest against another boat, along-side a wharf. *Held,* that the tug was not liable for the collision.

In Admiralty. Libel for collision.

*Carpenter & Mosher,* for libelants.

*Hyland & Zabriskie,* for claimant.

BROWN, District Judge. In the afternoon of October 21, 1891, as the libelants' schooner John Brill was beating up the East river in the flood-tide against a northerly wind, she tacked about opposite Catherine street ferry on the Brooklyn side, or a little below, but came about so slowly that before filling away she drifted with the flood-tide at least 400 feet up to Adams street, where her stern struck a square-headed barge in tow on a hawser from the Martha Bogart, and received some damage, for which this libel was filed.

The Bogart was coming down river, and passing Corlear's Hook in about mid-river, worked over to the Brooklyn side to pass a tug with a couple of vessels along-side off Jay street, and then noticed the libelants' schooner two or three blocks distant heading towards the Brooklyn shore. To avoid coming in contact with the schooner, and in order to go under her stern after she should have tacked from the Brooklyn shore, which she would very soon do, the tug gave several toots of her whistle, hauled in close to the Brooklyn docks, and came to a stand-still immediately along-side four coal-boats at the end of the Washington-Street pier, while the tow came to a stand-still against the end of a canal-boat projecting only 15 feet from the Adams-Street pier. The schooner tacked about 100 feet below and ahead of the tug, and in passing upwards in stays cleared the tug by about 15 feet; but losing control of herself, drifted some 300 feet further against the barge, which, as above stated, was at rest against a coal-boat and only 15 feet from the pier.

The libelants' action is founded upon alleged fault of the tug in not avoiding the schooner. But the tug for the purpose of avoiding the schooner had stopped her navigation and come to a stand-still, in effect making a landing both for herself and for her tow along the ends of the piers. It would scarcely be contended that had the Adams-Street pier been the destination of the barge, the tug would have been in fault for stopping and landing her there precisely as was done in this case; or

that the tug would have been liable for the subsequent drifting of the schooner against her tow.    Her landing there was neither forbidden nor imprudent.    The drifting of the schooner some 400 feet or more in making her tack was certainly a most unusual occurrence, and beyond anything that the master of the tug was bound to anticipate, or to provide against.    It was evidently as unexpected by the schooner, as by the tug, and was in no way caused by the tug.

Considering the difficulties of avoiding vessels beating across the narrow channel of the East river above the bridge in a strong tide, by a tug having a tow upon a hawser, and the actual liability to collision in this case had the tug kept towards the New York shore in the uncertainty that attended the schooner's course, it seems to me that the course actually adopted by the tug was the one which, upon all reasonable expectations, offered the freest course to the schooner, and was most likely to avoid collision.    It violated no rule of law, and it seems to me not open to the charge of fault or bad judgment.

The accident seems to me due to the perils of East river navigation; namely, (1) the presence of another tow in mid-river, compelling the schooner to make her previous tack there; (2) the presence of a sloop between that tow and the Brooklyn shore, which served to delay the schooner's last tack; and (3) some conditions attending her final tack not satisfactorily explained by the schooner, the result of which altogether was that she lost control of herself, and drifted in the flood-tide in a manner most unusual and not to be anticipated by the tug, against the barge at rest near the piers 400 feet distant.    This was, I think, the schooner's risk and not the tug's.

I must find that those facts do not amount to negligence in the tug, and the libel should, therefore, be dismissed, with costs.